IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ANTHONY STILLS,

      Petitioner,

v.                                                           CIV 98-664 BB/KBM

DONALD DORSEY, Warden, and
TOM UDALL, Attorney General,

      Respondents.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Anthony Stills' Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 and various supplements thereto, *Docs. 1, 15-17, 20,* Respondents' Motion To Dismiss Application With Prejudice, *Doc 12,* and Petitioner's responses thereto, *see Doc. 14 & various letters.* Because he filed after the effective date of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards[1] apply to this case. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999). All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *petition for cert. filed 5/10/00;* Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.*

Petitioner raises six categories of claims: (1) failure to give instruction on voluntary

---

[1] A federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2); *see also Williams v. Taylor,* 529 U.S. ___ , 120 S.Ct. 1495 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000).

manslaughter; (2) evidentiary issues; (3) sufficiency of evidence; (4) prosecutorial misconduct;

(5) ineffective assistance of counsel; and (6) cumulative error.  Having carefully considered the

entire record, pleadings, arguments, and relevant law, I recommend that Respondents' motion be

granted, and that the petition and its supplements be dismissed with prejudice.

## I.  Procedural Background

Petitioner was arrested for the murder of his stepdaughter Hollie Karr.  Following a 1995

bifurcated jury trial where he was represented by the public defender, Stills was found guilty of

felony murder, child abuse, criminal sexual penetration in the first degree, kidnapping, and two

counts of tampering with evidence.  He was acquitted of one count of criminal sexual penetration.

The jury was unable reach a unanimous decision regarding the death penalty and the trial judge

sentenced Stills consecutively to life imprisonment on the murder count and thirty-nine years on

the other counts.  *Answer, Exh. A.*[2]

On direct appeal, Petitioner was also represented by the public defender and raised a

number of claims.[3]  The evidence and issues were extensively briefed both by Petitioner and the

state.  *See Exhs. D-F.*  In a published opinion dated March 16, 1998, the New Mexico Supreme

Court addressed each issue on the merits and affirmed the conviction.  *State v. Stills,* 125 N.M.

66, 957 P.2d 51 (N.M. 1998).[4]  Petitioner filed this action *pro se* on June 3, 1998, and he

---

[2]  Unless otherwise noted, citations to exhibits refer to those attached to the Answer.

[3]  They were:  trial court error in admitting DNA evidence, refusing to give a jury instruction on manslaughter, disallowing testimony regarding hand swelling, and admitting evidence of semen stains on carpeting; prosecutorial misconduct; "cumulative error;" deprivation of "due process" and "fair trial;" ineffective assistance of trial counsel; and insufficiency of evidence.  *See Exh. D.*

[4]  All following citations are to the Pacific reporter.

2

generally raises the same categories of claims as were raised on direct appeal.[5]  Respondents

answered and filed a motion to dismiss, arguing that the New Mexico Supreme Court's decision is

entitled to deference under the AEDPA amendments.  *Doc. 12.*

## II.  Analysis

### A.  Failure To Give Jury Instruction on Voluntary Manslaughter

The Supreme Court's decision in *Beck* requires that a jury in a capital case be instructed

on a lesser included noncapital offense, if the evidence supports giving the lesser included

instruction.  *Beck v. Alabama,* 447 U.S. 625, 627 (1980); *see also Hopper v. Evans,* 456 U.S.

605, 610-12 (1982).  In Petitioner's case, he testified that he arrived home after Hollie was

murdered, found her, unsuccessfully attempted to resuscitate her, changed his blood-stained

clothes, and then called his wife to tell her about Hollie and to ask his wife to call 911.  A former

police officer who was incarcerated when Stills was taken into custody testified that Stills related

that he and Hollie had a quarrel that escalated after she pushed and cursed him.[6]  Based on this

---

[5]  Stills dropped the claim which asserted that he was denied due process and a fair trial
because:  the trial court ordered defense counsel to provide the prosecutor with transcripts of
pretrial interviews with witnesses; the trial court permitted the prosecutor to call rebuttal
witnesses; trial adjourned at 5:47 p.m. thereby permitting the prosecutor to prepare for rebuttal
closing argument overnight as opposed to having it done that day; and counsel was not permitted
enough time to prepare the docketing statement.  *Exh. D at 62-63.*  These claims were rejected by
the New Mexico Supreme Court.

[6]  The officer testified that Stills said
> he had a fight with [Hollie], that he was upset with her and that she
> had said she was not going to let him 'use her' anymore. . . . he got
> into a heated argument with her, and he slapped her.  At that point
> she said her dad would come . . . and kill him, she pushed him,
> swore at him, and told him to get out of her room. . . .  he hit her
> several times and . . . must have 'hit her hard' because his hand hurt
> and 'he hit her like a man.'

*Stills,* 125 N.M at 55-56.

portion of the officer's testimony, Petitioner requested an instruction on voluntary manslaughter. The trial judge refused on the grounds of "social policy."[7]

On appeal Petitioner argued that the trial judge applied the wrong "legal" standard.  *Exh. D at 45-48.*  Following a detailed analysis of the applicable state law and evidence, the New Mexico Supreme Court concluded that the trial judge did not abuse his discretion.  Although the New Mexico Supreme Court did not cite *Beck v. Alabama,* it did find that the evidence did not warrant giving the instruction.[8]  Given the officer's testimony, I find that the state decision is not contrary to *Beck,* nor is it unreasonable.[9]  *See Valdez v. Ward,* 219 F.3d 1222, 1238, 1242 (10th

---

[7]  The trial judge indicated that he thought "'it would set terrible social policy to even suggest that for some reason a parent, somehow in a household with a child, because the child said something angry or maybe even pushed the parent, that would present a factual question about reducing the crime of murder to voluntary manslaughter.'"  *Stills,* 957 P.2d at 60.

[8]  The New Mexico Supreme Court held that "words alone are not enough to arouse the passions such that murder is reduced to manslaughter" and that "'[m]ere sudden anger or heat of passion will not reduce the killing from murder to manslaughter.  There must be adequate provocation.'"  Furthermore, the provocation **must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition.**"  *Stills,* 957 P.2d at 60 (emphasis added).  It found as a matter of law that the instruction should not have been given because the evidence did not support it: "[e]ven if the fact that Hollie pushed [Petitioner] and threatened her father would come from California were true, we hold that these facts are not adequate to constitute sufficient provocation."  *Id.* at 61.

[9]  In an obvious afterthought, Petitioner attempts to circumvent the state court finding by now arguing that he is not of "average disposition" due to a motorcycle accident that he suffered thirteen years prior to the murder of his stepdaughter, where head injuries left him in a coma for three months and required nine months of rehabilitation.  This and other claims he makes in his petition here have never been presented to the state courts and, therefore, are technically unexhausted.  However, federal habeas courts can dispose of unexhausted claims that are without merit as I find with this and his other unexhausted claims.  28 U.S.C. § 2254(b)(2); *see also e.g., Slack v. McDaniel,* 529 U.S. ___, 120 S.Ct. 1595 (2000).  Under New Mexico state law it the nature of the provocation as opposed to an individual defendant's characteristics that is key.  *See e.g.,* NM Uniform Jury Instructions – Criminal 14-222 ("The 'provocation' is not sufficient if an ordinary person would have cooled off before acting.").  The dispositive facts in this regard – mere words and a shove from a teenager – have not changed in light of Petitioner's new argument that

Cir. 2000).

## B.  Evidentiary Issues

As to evidentiary issues, Stills claims that the trial court erred in:  (1) admitting DNA

evidence derived by the polymerase chain reaction ("PCR") method as reliable under the *Daubert*

factors; (2) refusing to exclude semen-stained carpet samples; and (3) excluding "rebuttal" expert

testimony concerning Petitioner's hand injuries because defense counsel failed to comply with

state procedural rules.  It is well settled that violations of state law, such as evidentiary rulings,

are not cognizable in federal habeas corpus unless an independent provision of the Constitution is

violated.  Thus, even erroneous evidentiary rulings are not grounds for federal habeas relief,

unless the rulings render the state proceedings so fundamentally unfair as to violate due process.

*E.g, Hill v. United States,* 368 U.S. 424, 428 (1962); *Williamson v. Ward,* 110 F.3d 1508, 1522-

1523 (10th Cir. 1997) (error for habeas court to apply *Daubert* factors in reviewing state court's

admissibility decision; must review under due process/fundamental fairness standard).

## 1.  Allowing PCR Evidence Does Not Violate Due Process

The PCR technique enables DNA analysis to be performed on very small samples.  Using

that technique, DNA matching Petitioner's was found on a pair of bloody gloves that contained

the victim's blood.  The gloves were found in a sewer.  One glove had the tip of one finger

missing and it matched the glove tip found in the victim's room.  The pair of gloves also matched

those contained in a box of gloves kept under Stills' kitchen sink, which had one pair missing.

Stills testified that he had taken the pair out planning to change the oil in his car, but changed his

mind and left the gloves in the house when he left.  *Stills,* 957 P.2d at 55.

---

he is not of "average" disposition.

The trial court held a four-day pretrial hearing on the admissibility of the DNA evidence using the PCR technique.  Petitioner's case was the first PCR case entertained by the New Mexico Supreme Court, which thoroughly reviewed the evidence and expert testimony presented at the hearing, decisions from other state and federal courts, and applied the *Daubert* factors.  I will not reiterate that thorough analysis here.  Noting that the technique "'has received overwhelming acceptance in the scientific community and the courts'" and has been approved by other states since 1992, the New Mexico Supreme Court held PCR evidence admissible in New Mexico state courts.  *See Stills,* 957 P.2d at 55, 56-59.

Apparently at least one of three PCR results lacked a "control dot," which is the marking indicating whether "controls" were run on that particular test sample.  At trial and on appeal, Petitioner attacked the absence of a control dot as rendering the lab results unreliable and the bloody glove evidence therefore inadmissible.[10]  The New Mexico Supreme Court rejected these arguments, noting that the jury heard testimony from lab personnel concerning the lab's procedures to prevent errors, from defense expert testimony concerning the problems he found with the lab results, and from prosecution experts.  It held that controversies over the results of the test go to the weight and not the admissibility of the evidence.  In a separate part of the opinion the court found that Petitioner received a fair trial.[11]

---

[10] I note that Petitioner did not and does not argue that the lack of the control dot on this one sample otherwise changed the result that the DNA matched his.

[11]  In rejecting Petitioner's prosecutorial and cumulative error claims, the New Mexico Supreme Court concluded without discussion that Petitioner received a fair trial.  It likewise concluded without discussion that there was substantial evidence to support his convictions. *Stills,* 957 P.2d at 62-63.  These state "results" are entitled to deference even if the opinion neglects to provide any reasoning for the conclusion.  *See Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999).  Independently, I have carefully reviewed the evidence presented by Petitioner

Having been afforded a thorough hearing before introduction of the PCR evidence, the opportunity to challenge the results before the jury, and a thorough review on appeal, there is simply no basis for finding a due process violation.  This ground affords no basis for federal habeas relief.

### 2.  Introduction of Carpet Samples Did Not Violate *Brady/Trombetta*

Carpet samples taken from under the victim's crotch tested positive for sperm, but the samples were not large enough to obtain a DNA analysis of the sperm using the PCR technique. At trial, the samples were introduced for the purpose of showing the presence of sperm.  Stills argued before the trial court and on direct appeal that the way the state handled the samples allowed potentially exculpatory evidence to dissipate in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).  He argued that if the sperm on the carpet been sent off immediately for PCR analysis instead of waiting fifteen months, during which the samples were unfrozen and allowed to remain at room temperature before being refrozen, then a DNA analysis may have identified someone else as the perpetrator.  *Exh. D at 54.*

Petitioner's reliance on *Brady* was misplaced, since it is *Trombetta/Youngblood* line of cases that controls claims of failure to preserve exculpatory evidence.  *See Arizona v. Youngblood,* 488 U.S. 51 (1998); *California v. Trombetta,* 467 U.S. 479 (1984).  Unlike *Brady, Trombetta/Youngblood* requires proof of bad faith on the part of the prosecution.  *See United States v. Gomez,* 191 F.3d 1214, 1218 (10th Cir. 1999); *Fero v. Kerby,* 39 F.3d 1462, 1472 (10th Cir. 1994), *cert. denied,* 515 U.S. 1122 (1995); *Smith v. Secretary of New Mexico Dept. of*

---

here and in the briefs in the state courts.  As discussed in more detail above, I too find that Petitioner received a fair trial and that there was sufficient evidence to support the convictions.

*Corrections,* 50 F.3d 801, 824  fn.34 (10th Cir.), *cert. denied,* 516 U.S. 905 (1995).

The Supreme Court of New Mexico analyzed the claim citing a state decision that applies the correct federal constitutional standard.  *Stills,* 957 P.2d at 61 (citing *State v. Ware,* 118 N.M. 319, 321-322 (N.M. 1994), which discusses and applies *Brady/Trombetta/Youngblood* line of cases).  Its determination that there was no evidence of bad faith is the type of "subsidiary" factual finding underlying a legal determination that is presumed to be correct.  *See Valdez,* 219 F.3d at 1230 (whether defendant understood *Miranda* rights is question of fact); *id.* at 1232 (whether statement constitutes unequivocal request for counsel is question of law).  Here, Petitioner makes no clear and convincing showing of bad faith, nor does my independent review of the record reveal one.  *See* 28 U.S.C. § 2254(3)(1).  To the contrary, the first tests did not reveal the presence of sperm – it was only after a more powerful microscope became available to the prosecution one year later that sperm was discovered and sent for PCR typing.  *Exh. E at 59-60.* Because there is no evidence of bad faith, I find that refusing to exclude the samples does not violate *Trombetta/Youngblood.*

### 3.  Excluding Expert "Injured Hand" Testimony Did Not Render Trial Unfair

There was testimony that the victim's eye and jaw injuries were consistent with being hit by a fist.  Photographs of Still's hands taken on the morning after the murder showed that the knuckles on his right hand were swollen and cut.  The prosecution expert testified that the injuries to Still's hand were consistent with what one would expect to see from the person who beat Hollie.  Defense expert Dr. Kris Sperry was originally going to testify only about vaginal injuries. After hearing the other experts' testimony, however, the defense moved to allow Dr. Sperry testify, among other things, that Petitioner's hand injuries would have been more severe given the

severity of the beating Hollie received. *Exh. D at 50-51.* The trial judge disallowed it, finding that defense counsel engaged in delay tactics. The New Mexico Supreme Court found that the trial judge did not abuse his discretion in this regard. *Stills,* 957 N.M. at 61.

While Stills testified that he punched a wall in anguish at finding his stepdaughter, the officer inmate testified that Stills told him he was going to concoct the wall story to cover for his battered hand. Thus, there was no dispute that Stills' hand was in fact injured. I find that the extent to which a hand might be injured due to punching someone is within the everyday experience of jurors. Under these circumstances, I cannot find that excluding the testimony rendered the trial fundamentally unfair.

## C.  Sufficiency of Evidence

The Tenth Circuit has not resolved whether sufficiency of evidence claims are resolved as questions of law or fact under AEDPA. *Valdez,* 219 F.3d at 1237. Nevertheless, the relevant inquiry is whether, after viewing all of the evidence "in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a  reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis original). This is the same standard applied by the state court. *See Stills,* 957 P.2d at 63. Review under *Jackson* is highly deferential – circumstantial evidence is sufficient to support a conviction, this Court cannot weigh conflicting evidence or make judgments about witness credibility, and this Court must presume that the fact finder resolved conflicting inferences in favor of the prosecution, even if the record does not reflect exactly how the conflicts were resolved.[12]

---

[12]  *E.g., Messer v. Roberts,* 74 F.3d 1009, 1013 (10th Cir. 1996); *Stallings v. Tansy,* 28 F.3d 1018, 1020 (10th Cir. 1994); *Kelly v. Roberts,* 998 F.2d 802, 807 (10th Cir.1993); *Grubbs v. Hannigan,* 982 F.2d 1483, 1486 n.3 (10th Cir. 1993); *Tapia v. Tansy,* 926 F.2d 1554, 1562

Petitioner challenges the sufficiency of the evidence for the rape and murder convictions only.[13] The bloody glove evidence combined with a few key other pieces of circumstantial evidence mentioned by the New Mexico Supreme Court are sufficient to support the jury's verdict.[14] I, therefore, cannot find that the state court's conclusion that the proceedings were fundamentally fair and the evidence sufficient is an unreasonable application of Supreme Court precedent.

### D. Prosecutorial Misconduct

On direct appeal, counsel raised five categories of prosecutorial misconduct containing a total of eleven arguments, including the assertion that certain comments during rebuttal argument impermissibly shifted the burden of proof to the defendant in violation of federal law. The New Mexico Supreme Court mentioned only some of the grounds raised and applied a "fairness" due process standard. *Stills,* 957 P.2d at 62. In this federal habeas action, Petitioner has dropped one argument made by counsel,[15] raised other of counsel's arguments by reference, and added

---

(10th Cir.), *cert. denied,* 502 U.S. 835 (1991); *Cordoba v. Hanrahan,* 910 F.2d 691, 694 (10th Cir.), *cert. denied,* 498 U.S. 1014 (1990).

[13] On direct appeal the sufficiency claim was vague, but it is apparent from the context of the other claims that the kidnapping, child abuse, and tampering charges were not specifically challenged. Rather, the focus there and here was on the rape/murder charges.

[14] They are: the victim sobbing upset on the telephone just prior to her death; the forensic evidence of rape and death by beating and strangulation; the bloody gloves DNA match; Stills testifying that he attempted to administer CPR and stopped to change his clothes and clean up, then calling his wife to tell her something was wrong and asking *her* to call 911; fresh scratches on Stills' face and neck the day of the murder; and the testimony of the officer inmate.

[15] The trial judge ruled before trial that evidence of a prior incident where Stills pushed his stepdaughter would not be admissible. Stills was present when the trial judge made his ruling. *Exh. E. at 65.* During cross-examination of Stills, the prosecutor asked whether he had ever been asked to leave the house. Stills responded yes. The prosecutor asked whether he was having

new ones.

### 1. Comments Did Not Shift The Burden of Proof

Prosecutorial misconduct claims that implicate a specific constitutional provision are not analyzed under the due process standard. *Paxton v. Ward,* 199 F.3d 1197, 1217 (10th Cir. 1999). The burden of proof claim, though based on the due process clause, is arguably a specific constitutional right of this sort. *E.g., In re Winship,* 397 U.S. 348 (1970). Because the state court decision does not set forth the reasons for its "fairness" conclusions, I must independently review the record. *Aycox,* 196 F.3d at 1177. Respondents did not submit the trial transcript and I did not order it because I find that upon careful review of the entire record it provides the factual detail necessary to resolve these claims. Rule 8, *Rules Governing Habeas Corpus Under Section 2254.*

Here there is no allegation that the jurors were not properly instructed that the prosecution bears the burden of proof. *See Clayton v. Gibson,* 199 F.3d 1162, 1173-74 (10th Cir. 1999), *petition for cert. filed 5/20/00.* I find that three specific comments raised by counsel and raised by reference by Petitioner,[16] constitute proper comment on the evidence. *See Trice,* 196 F.3d at

---

trouble with his wife and stepdaughter at the time. Rather than answering yes or no (which this cross-exam question clearly called for), Stills "launched" into a lengthy explanation that his stepdaughter accused him of pushing her and his wife asked him to leave. Defense counsel did not object during the questioning or answer and two hours later moved for a mistrial on the ground that the question elicited prior bad acts testimony. *Id.* Petitioner does not specifically mention this ground in his habeas petition. And, like the state judges, I find that the testimony was gratuitous, was not elicited, and that there was no misconduct. *See Stills,* 957 P.2d at 62; *Exh. D at 31; Exh. E. at 64.*

[16] *Exh. D at 59; see also Doc. 1 at 6b.* On the day of the murder two children approached the police officers and told them they had seen bloody gloves in the street at a certain intersection. The officers looked for forty-five minutes but did not find them. The next day they returned and found one glove in the gutter, a piece of one on top of the storm drain and another piece at the

1167;  *United States v. Amerson,* 185 F.3d 676, 687 (7th Cir.), *cert. denied,* 120 S.Ct. 549 (1999).

Thus, I find there is no independent constitutional infirmity and the state court result was

objectively reasonable.  *See Van Woudenberg,* 211 F3d at n.4 (erroneous application of state law

must be objectively unreasonable for habeas relief to issue); *Paxton,* 199 F.3d at 1217 (where the

state court applies  fundamental fairness analysis to a prosecutorial misconduct argument based on

a specific constitutional provision, that decision is not entitled to deference under AEDPA).

### 2.  Other Comments On Evidence Were Proper And/Or Inconsequential

On direct appeal, counsel argued that on three occasions the prosecutor mischaracterized

evidence and thereby commented on facts not in evidence by giving his personal opinion and

appealing to the prejudice of the jury.  Petitioner adds six more of his own allegations of

mischaracterization, in addition to claims that the prosecutor offered his personal opinion as to his

guilt.  He also raises a conclusory claim that the prosecutor appealed to the prejudices of an 80%

white jury.

The overwhelming majority of these instances were either proper comment on the

---

bottom of the drain, which they fished out with a coat hanger.  They testified that none of the
officers touched the gloves.  *Exh. D at 9.*  The prosecutor commented that defendant had not
proven that the bloody gloves had been mishandled.

A detective fingerprint examiner testified that he found Stills' and others' fingerprints on
the box of gloves under the sink but only found Stills' on the pull-tab opening the box.  *Id. at 11.*
Counsel argued that the prosecutor stated in closing that Petitioner had not disputed the
fingerprint evidence.  Indeed, he had not.  Petitioner testified that he was the one who took the
pair of gloves out.  *Id. at 29.*

The defense strategy was to suggest that a male friend of the victim or someone else was
the perpetrator.  *Id at 24; see also Exh. E at 67.*  The prosecution countered these suggestions
with evidence that the male friend was too small to have inflicted the harm, had no hand injuries,
and was at golf practice that afternoon acting "normal and cheerful."  *Exh. E at 22.*  During
argument, the prosecution told the jurors that they should "examine" the defense's "list of
suspects."

evidence or inconsequential distinctions, particularly since the trial judge instructed the jury

several times to "rely on their own memories."[17]  *See Trice,* 196 F.3d at 1167 (prosecution can

---

[17]  *See Doc. E. at 66.*  For example, the prosecutor referred to the victim "coughing" blood.  An officer testified Stills told him his stepdaughter "coughed" blood onto him as he administered chest compressions during CPR.  *Exh. E at 66.*  Stills testified that she "spit up blood out of her mouth" when he applied the pressure.  *Id at 16.*

The defense raised the issue that the semen on the carpet samples may have been old.  To counter this, the prosecution tried to establish that the samples  were "wet" and alluded to that evidence in opening statement.  However, none of the officers could testify definitively that the samples were "wet."  Ultimately, one officer testified that he did not know if the spots were wet or dry; another testified that they may have been damp or dry.  In closing the prosecutor argued that the spots "might" have been wet.  *See id. at 66-67.*

The prosecutor commented that "Dr. Tracey tells you [the test results] excludes 99.5 percent of the work's population, folks, that's better than I've ever seen."  This unnecessary quip was obvious commentary on the unusually high percentage and would have been obvious to the jurors.  Defense trial counsel did not even object to the comment at trial.  *See id. at 67-68.*

The prosecutor referred to the defense as a "smoke screen" – "if you got the facts, argue the facts.  If you've got the law, argue the law.  If you haven't got either, blow some smoke.  You would have to start a fire from . . . Clayton to Carlsbad to produce enough smoke to obscure this road of truth that [Petitioner] is responsible for this homicide."  *Exh. D at 35.*  On the cold record this could have been uttered glibly and in a tone inappropriate for the proper demeanor of a courtroom.  In substance nonetheless, it is simply commentary on the weight of the evidence which the prosecutor is entitled to do.

The prosecutor "told the jury what he personally thought a person would do in Appellant's situation upon first discovering Hollie.  The prosecutor, over a defense objection, stated that he thought "what you would do would be to call 911 and scream for help."  *Id. at 34.*  The state did not respond to this argument in its appellate brief.  Commenting on credibility and asking jurors to appeal to their common sense is appropriate.  I have no doubt that the jurors asked themselves that question on their own upon hearing Stills' version of the events.

All of Petitioner's claims here are also without merit.  A witness who called and spoke with Hollie right before her murder called back a short time later and the Stills' answering machine picked up.  His argument that the prosecutor should not have been permitted to comment on the evidence of the telephone call because the officers neglected to retrieve the answering machine tape is patently without merit.  *See Doc. 1 at 6b; Exh. C at 14, 20, 22.*  Stills argues that the prosecutor should not have commented that he was rubbing the knuckles of his hand.  However, a police officer testified that he observed Petitioner doing so and that is what led him to inquire further about the state of Still's right hand.  *Exh. E at 19.*  Stills argues that the prosecutor should not have commented that towels were missing from his bathroom.  However, Stills' wife testified that blood she had earlier observed in the bathroom was gone and towels were missing after she returned home upon receiving Petitioner's telephone call.  *Id. at 26-27.*  Stills argues that the prosecutor commented there were "burns" on the victim's back, but I note

comment on evidence, including defendant's failure to "call certain witnesses or present certain testimony").  Only two of the instances were even arguably improper.

All of defense experts were from Emory University in Georgia.  The prosecutor called Dr. Sperry "another one of those folks from Georgia that comes to Albuquerque to testify, and they look at the stuff when they get here."  *Exh. E at 68.*  The prosecutor also said "[no] tears on April 19th, 1993 [the day of the murder], no tears."[18]  *Id. at 67.*

On habeas review "'to view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution.' . . .  Ultimately, we 'must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.'"  *Fero,* 39 F.3d at 1474 (citations omitted).  Thus, even if the comments were improper, the question is whether they were significant enough to influence the jury.  *See Tillman v. Cook,* 215 F.3d 1116, 1129 (10th Cir. 2000); *Moore v. Reynolds,* 153 F.3d 1086, 1113 (10th Cir. 1998), *cert. denied,* 526 U.S. 1025 (1999).  I find that there is no reasonable probability that the outcome would have been different because, in light of the

---

there was some testimony that the victim's bra strap was broken and it had been "removed."  *Id. at  13.*  In light of the other graphic and extensive damage to the victim and the other evidence, even if the comment was technically wrong, it was inconsequential in terms of the victim's death. The comment also helps bolster Petitioner's position that he too attempted to administer CPR. Finally, Petitioner argues that the prosecutor commented on a semen "stain" found in his shorts, when only under microscope could evidence of  "sperm heads" be seen in his shorts and experts testified that a drop of semen could yield millions of sperm heads.  *Exh. C at 9.*  If indeed that characterization was made, I also find it inconsequential.

[18]  In it's brief on appeal, the State asserted that this comment was in reference to Stills crying on the stand during direct but not on cross-examination.  On the basis of the record before me, I find this assertion dubious.

substantial evidence of Petitioner's guilt as discussed in the preceding section and the footnotes to

this section, none of the comments alone or taken together could have unfairly influenced the jury.

*See Pickens v. Gibson,* 206 F.3d 988, 999 (10th Cir. 2000); *Hoxsie v. Kerby,* 108 F.3d 1239,

1244-45 (10th Cir.), *cert. denied,* 522 U.S. 844 (1997).  Thus, none of Petitioner's claims of

prosecutorial misconduct "so infected [the trial] with unfairness as to make the resulting

conviction a denial of due process."  *Donnelly,* 416 U.S. at 645.

### E.  Ineffective Assistance of Counsel

Petitioner argues that counsel was ineffective in investigating and preparing the case.  The

New Mexico Supreme Court applied the *Strickland v. Washington,* 466 U.S. 668 (1984),

standard and saw "nothing in Defendant's argument or the record that suggests that defense

counsel's representation was deficient such that defendant was prejudiced and deprived of a fair

trial."  *Stills,* 957 P.2d at 62.

Under *Strickland,* Petitioner must show that counsel's representation was objectively

unreasonable and overcome the strong presumption that counsel's conduct falls within that

category.  *E.g., Strickland,* 466 U.S. at 689; *Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th

Cir. 1999).  Petitioner must also establish "prejudice" or that absent counsel's errors, there is a

"reasonable probability" that the outcome of the trial would have been different.  In making this

assessment, the Court looks at all of the evidence, not just the evidence helpful to Stills, to

determine if confidence in the jury's outcome is undermined.  *E.g., Foster v. Ward,* 182 F.3d

1177, 1185 (10th Cir. 1999), *cert. denied,* 120 S.Ct. 1438 (2000)*; Moore v. Gibson,* 195 F.3d

1152, 1178 (10th Cir. 1999), *cert. denied,* 120 S.Ct. 2206 (2000).

Based on my previous findings on the sufficiency of the evidence and the fairness of the

proceedings, Petitioner's claim fails on the prejudice prong.  The state decision was therefore

neither contrary to nor an unreasonable application of *Strickland*.  *See e.g., Trice,* 196 F.3d at

1160-1161; *Moore,* 195 F.3d at 1178-1179; *Hooks v. Ward,* 184 F.3d 1206, 1218-19 (10th Cir.

1999).

### F.  Cumulative Error

> A cumulative-error analysis aggregates all the errors that individually have been
> found to be harmless and analyzes whether their cumulative effect on the outcome
> of the trial is such that collectively they are not harmless. *United States v. Rivera,*
> 900 F.2d 1462, 1470 (10th Cir. 1990). 'Cumulative error analysis applies where
> there are two or more actual errors; it does not apply to the cumulative effect of
> non-errors.' *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998), *cert.
> denied,* 526 U.S. 1025 (1999).

*Van Woudenberg,* 211 F.3d at 571.  I find any items ultimately found to be error are harmless in

the aggregate.  Therefore, the state decision is entitled to deference and the claim is without merit.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** Respondents' motion *(Doc. 12)* be granted

and that the petition and its supplements be dismissed with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF
SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file
written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A
party must file any objections with the Clerk of the District Court within the ten day
period  if that party wants to have appellate review of the proposed findings and
recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE